1                   UNITED STATES DISTRICT COURT

2                     DISTRICT OF SOUTH DAKOTA

3                        SOUTHERN DIVISION
     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
4                                          Civ. 15-04189

5    DENNIS NEUGEBAUER,

6                     Plaintiff,

7          -vs-

8
     AMERICAN FAMILY MUTUAL
9    INSURANCE COMPANY,

10                    Defendant.

11
                                  U.S. Federal Courthouse
12                                Sioux Falls, SD
                                  July 7, 2016
13                                9:00 a.m.
     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
14
                           H E A R I N G
15
     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
16   BEFORE:   The Honorable Karen E. Schreier
               U.S. District Court Judge
17             Sioux Falls, SD

18   APPEARANCES:

19   Mr. Derek A. Nelsen
     Fuller & Williamson, LLP
20   7521 S. Louise Avenue
     Sioux Falls, SD 57108
21   (appearing by telephone)
                              for the Plaintiff
22
     Mr. Steven J. Morgans
23   Myers Billion, LLP
     PO Box 1085
24   Sioux Falls, SD 57101-1085
     (appearing by telephone)
25                            for the Defendant

1              * * * * *  JULY 7, 2016  * * * * *

2          (In open Court, counsel appearing by telephone,

3      at 9:00 a.m.)

4              THE COURT:  This is the time scheduled for a

5      hearing in the matter entitled Dennis Neugebauer vs.

6      American Family Mutual Insurance Company.

7              Would counsel please note their appearances

8      for the record?

9              MR. PREHEIM:  Eric Preheim on behalf of the

10     Plaintiff, Dennis Neugebauer.

11             MR. MORGANS:  And Steve Morgans on behalf of

12     Defendant, American Family Mutual Insurance Company.

13             THE COURT:  I've read the briefs from both

14     sides.  Mr. Preheim, did you want to add anything

15     else?

16             MR. PREHEIM:  I would rely primarily on our

17     brief.

18             I do have a little argument in the sense of

19     kind of just emphasizing that this issue has -- these

20     discovery issues have been repeatedly litigated in

21     South Dakota Federal District Court, and we think this

22     issue is not really a novel issue, though it is an

23     important issue.

24             So I don't want there to be any impression

25     that just because this has been done, that in this

1    case this is any less important to my client,

2    Denny Neugebauer.

3            I intend to get into more of an argument

4    that's structured, if the Court is willing to

5    entertain it.  However, I don't need to.  I would rely

6    on the brief, if needed.

7            THE COURT:  Thank you.  Mr. Morgans?

8            MR. MORGANS:  Yes, Judge.  I would primarily

9    rely on the briefs, as well.  I would just like to add

10   a few comments or argument in addition to the briefs.

11           As I mentioned in our opposition, Judge,

12   Defendant believes that the context and factual

13   backdrop of the claims at issue in relation to the

14   request and the burdens involved in producing

15   information are critical in the valuation of these

16   discovery issues.

17           In this matter, and even from Plaintiff's

18   first brief and motion to compel, and even starting

19   with the Complaint in the first instance, the factual

20   backdrop of the claims has shifted, as we outlined in

21   our briefs, in the sense that the primary focus in the

22   Complaint was based upon a June storm back in 2014.

23           Now there has been a recognition of a second

24   storm, and now I believe there's even been in the

25   reply brief a recognition that the first inspection

that was complained of, where there was no repairable

damage noted by American Family, that that inspection

occurred actually the morning of the second storm in

June of 2014.  I think it's important to note that

context.

And then the fact that, at least as far as I'm

aware, there's been no complaints as to the timeliness

involved and the reasonableness -- or in the

timeliness of the first inspection and when the second

inspection occurred and when the appraisal process

occurred, that if Plaintiffs have possession of the

claims file and claims notes, and I think at the times

when those were requested or followed up by

Mr. Neugebauer, that those occurred.

So what the dispute boils down to now is

whether Mr. Neugebauer was -- whether the damage to

his roof merited a full roof replacement, or whether

the second estimate or the appraisal process that

found damages in the -- and I'm just generalizing,

Judge, for context -- but in the neighborhood of about

$4,000 or around $14,000 was the correct frame of

reference.

So I think those facts are important when we

consider the proportionality of the discovery

requests.

1        Defendant is aware of some of the prior

2    decisions in some of these areas, but would just

3    submit that each case is unique on its own facts, and

4    that this case is unique in that sense in that when

5    you consider the specific allegations of bad faith in

6    this case that have shifted, that there is no -- there

7    isn't anything sitting in the claims file, or even on

8    the face of it, that is something that would be akin

9    to, for instance, the Gowan decision where there was a

10   note in the file that said, "File strategy goal:  Deny

11   further."  There isn't that type of situation here.

12        So what Defendant American Family attempted to

13   do is to really limit this as substantial corporate

14   discovery set that we believe goes beyond

15   proportionality of the case and issues.

16        I know I went probably longer than I intended

17   on the factual backdrop.  Let me just note two things

18   in the particular issues beyond the briefs.

19        The first, in regards to the issue on

20   personnel files, Judge, as has been I think briefed by

21   both parties, Defendant has produced the personnel

22   files and the compensation information on the four

23   employees personnel that were directly involved in

24   this claim, as well as their supervisor, and we

25   believe that the issue is going beyond that.  What is

reasonably to be produced?

I want to point out that as part of Plaintiff's brief, one of the reasons they argue for the extent of personnel -- well, actually I'm going to slightly change direction.

On the personnel file, I just wanted to reiterate that in the Gowan decision, for instance, as we look at the cases that talk about how far you go in production of these personnel files, that we do not have an instance where there is a tie-in to the Plaintiff's claims in any type of allegations against the supervisors.

What I was referencing before was actually in regards to the claims files or all documents related to Heather Steffens over the last ten years that she's investigated, and I wanted to factually note that. Because in Plaintiff's brief they mention that she was the one who, in addition to initially determining no damages, that she later identified damages, and the actual amount is $3,781.19.

The claims notes reflect that she -- that actually was not her. It was Richard Finley. I raise that because the bases for those requests are based on inaccurate facts. As this Court is aware, as we go through --

1          THE COURT:  So are you saying Heather

2   Steffens is not the one that initially determined that

3   there was no damage?

4          MR. MORGANS:  No.  She was the one who

5   determined there was no damage.  I think the gentleman

6   that had -- that did the reinspection, I believe, is

7   the employee whose file was produced was

8   Richard Finley, Judge.

9          Because there was argument in the brief from

10  Plaintiff's counsel about Heather Steffens and her

11  stating there was zero damage, and then later a higher

12  amount, that's a reason and basis for that request.  I

13  just wanted to clarify that.

14         THE COURT:  So is Heather Steffens the

15  claims adjustor assigned to this claim?

16         MR. MORGANS:  No.  Heather Steffens was I

17  think a cat, catastrophe adjustor, actually based out

18  of I think Iowa, Judge, and I think they travel to

19  perform these inspections.

20         It's my understanding that her limited role

21  was to do that initial inspection and provide that to

22  American Family.  So she was not like the claims

23  handler through the first year of the file.

24         THE COURT:  So is she an employee?

25         MR. MORGANS:  She would be considered an

1    employee, I believe, Judge.

2         THE COURT:  And she's assigned to wherever

3    there are catastrophic incidents, to go and do the

4    adjusting?

5         MR. MORGANS:  That's my understanding.

6         I did want to spend just a little bit of time,

7    Judge, on the request as to I guess what I would

8    identify as trying to identify nationally

9    case-specific similar situations.

10        I would start by saying I'm not sure I've ever

11   seen a more broad and burdensome request in my years

12   of practice, to require any Defendant to do that type

13   of review and analysis.

14        Obviously when you start with -- what requests

15   for production typically do is identify the documents

16   in possession.  I know at some point that can raise up

17   the level of analysis to where they are having to

18   analyze data.

19        But as that data is having to be analyzed

20   versus documents in possession, the burdensome nature

21   of those requests obviously raises substantially as

22   further analysis is needed.

23        When you look at that specific request --

24        THE COURT:  So are you talking about

25   Request No. 8, Request for Production No. 8?

1          MR. MORGANS:  Correct.  That they would have

2     to do a national review of all claims files, identify

3     any claims files, or produce any claims files, and

4     claims forms completed, et cetera, related to hail

5     damage, including log entries, evaluations, reserves,

6     where American Family initially claimed that there was

7     no damage to shingles covered under policy, but where

8     they later determined there was damage to shingles.  I

9     would respectfully disagree with counsel that that

10    would in any way, means, or form be a needed process.

11         I understand that's not in and of itself a

12    reason for a nonproduction, Judge.  But in the

13    analysis of proportionality, and considering some of

14    the factual misunderstandings of what we are dealing

15    with here, including the fact that this is having us

16    analyze where there was initial denial, and we have

17    this very unique situation where we have a second

18    storm event the date after -- or the same night that

19    the first inspection was creates just what we believe

20    is an extremely tenuous reach and a very overly

21    burdensome request.

22         THE COURT:  So did you prepare a privilege

23    log?

24         MR. MORGANS:  A privilege log has not been

25    completed, Judge.

1           THE COURT:  So you claimed attorney-client

2    privilege.

3           MR. MORGANS:  There are some portions.  Part

4    of that is I've requested clarification on some of the

5    production from corporate counsel as to what that

6    identifies.  We need to complete that, Judge.

7           THE COURT:  So Rule 26(b)(5) says that if

8    you're claiming privilege, that the party must

9    expressly make the claim and describe the nature of

10   the documents, communications, or tangible things not

11   produced or disclosed.  "Must" means you have to do it

12   if you are claiming attorney-client privilege.

13          MR. MORGANS:  And I don't disagree with

14   that, Judge.

15          THE COURT:  Or the privilege is waived.  Do

16   you understand that?

17          MR. MORGANS:  Yes.  Judge, we simply -- we

18   don't dispute that that was required, and that I was

19   in discussions with counsel as far as timing of

20   getting that done, and the motion to compel came.  I

21   understand that there are no excuses for that.

22          THE COURT:  So the general objections that

23   you filed, the first one indicated that no documents

24   would be turned over until a protective order was in

25   place.  One is now in place.  Right?

1          MR. MORGANS:  Correct.  That's true.

2          THE COURT:  Mr. Preheim, with regard to the

3     time frame of all of the requests, it appeared to me

4     that the plaintiffs indicated that it could be reduced

5     to a five-year time period instead of the ten years

6     that was in the written Interrogatories and Request

7     for Production of Documents.  Is that correct?

8          MR. PREHEIM:  I think that's correct only

9     with regard to Interrogatory No. 13, we agreed to

10    reduce from 10 years to five years.

11         All the other time periods have remained the

12    same as originally requested.

13         THE COURT:  Okay.  As an overall matter, I

14    think a five-year time period is appropriate and will

15    apply to all of the requests.

16         MR. PREHEIM:  Understood.

17         THE COURT:  The other general objection by

18    the Defendants was to claims outside of South Dakota

19    dealing with hail loss.

20         Does anyone want to address that specifically?

21         MR. PREHEIM:  Yes.  I can go with that,

22    Your Honor.  With regards to, again, the outside of

23    South Dakota, this argument has again been made and

24    remade and remade and remade.  I think we're about six

25    or seven times now that this argument has been

formally made by various insurance companies.

The problem with the argument about limiting it to just South Dakota, in this case Neugebauer is alleging that American Family has a systemic practice of initially denying or -- denying outright completely, or coming up with a number that's less than the deductible after the initial investigation.

Then and only then, after the insured comes back and says, "Well, that can't be, it doesn't make sense," that they do another investigation. Then they come back with a little bit more. That's essentially what's happened here.

That isn't limited to just South Dakota. That type of a thing doesn't depend on the law in any other state. That type of thing, whether it happens in North Dakota or South Dakota or any other state, it will still help demonstrate the pattern and the practice that American Family has demonstrated here.

That's why it should not be limited to South Dakota. There are other cases that have addressed this issue. We've outlined those in our briefs, where again we don't need to be limited to just South Dakota claims handling in order to figure out -- or to establish, I guess I should say, not figure out. We know it's already happening here.

But to establish just how widespread of a problem or practice this is, to limit it to South Dakota is to essentially deprive relevant information from a plaintiff that is alleging a systemic-wide practice in an insurance company that is outside of South Dakota.

For those reasons, we think that the general objection is just -- it shouldn't be made procedurally, and it's also just in this case inappropriate.

THE COURT:  Mr. Morgans?

MR. MORGANS:  Judge, I would just go back to Defendant's position on the comparison of the specific facts of this case and the allegations.

Obviously in any case we can have allegations of a systemic-wide, corporate-wide practice of anything.  That can be in any individual bad-faith case.

But the allegations must start from Point A where there is some basis for those allegations before -- we're basically starting at the broad end and working back to the narrow.  That's what I believe has happened in this case, and even with a shifting theory of those allegations as to what the systematic practice is.

1    So we would, whether it is related to the

2    specific objections within our responses or the

3    general objection, which I think is consistent with

4    the responses, we believe that's not proportional, not

5    relational to this case.

6         THE COURT:  With regard to the general

7    objection, first of all, I find it would lead to

8    relevant evidence.  It's possible it may show an

9    insurer's knowledge, a pattern and practice of

10   inadequate investigation, offering unreasonably low

11   settlement offers.

12        It may be admissible if the punitive damages

13   issue goes to the jury to show reprehensibility.

14        So I find that it is relevant evidence.

15   Therefore, the general objection would not stand.

16        The other general objection that was raised is

17   to claims other than hail damage.  I'm going to take

18   that up specifically with regard to individual

19   requests, rather than as a general objection.

20        I did want to also note that with regard to

21   general objections, the rules are pretty specific.

22   Rule 33(b)(4) indicates that grounds for objecting to

23   an interrogatory must be stated with specificity.

24        With regard to Rule 34(b)(2)(B), it also

25   states that with regard to requests for production of

documents, that any objection has to be stated with specificity regarding the request, including the reasons.

So general objections generally are not sufficient to refuse to respond to an interrogatory or Request for Production of Documents.  You have to state your objection with specificity with regard to each particular request that was made.

So the general objections are overruled, except to the extent that the request will be reduced to a five-year time period.

The first item raised in the motion then is to Interrogatory No. 13, and that requests information about any claims against American Family where they've been a party in an insurance bad faith or unfair claims processing matter.

The objection by American Family was that it was overly broad and unduly burdensome and not likely to lead to the discovery of admissible evidence.  It's reduced to a five-year time period, but the objection by American Family I find to not have merit.

The information requested is information that is relevant and may lead to admissible evidence.  At a five-year time period the request is not overly broad and duly burdensome.  American Family has the burden,

once the Plaintiff has shown relevance, to show how it
would be overly broad or unduly burdensome.  American
Family has not come forward with anything that would
meet that burden.

Several other Courts in South Dakota,
including this Court, have addressed the issue.  The
Lillibridge case, in particular, found that a similar
request was reasonable.

So based on the analysis in Lillibridge, I'm
going to order American Family to respond.

The next request is Request for Production
No. 9, and it asks for any documents relating to
regulatory actions where American Family's property
claims-handling was in question.  This request is not
limited to South Dakota.  It's a nationwide request.

The objection by American Family here was that
it has information protected by the attorney-client or
attorney work-product privileges.  And as I previously
indicated, if you are claiming attorney-client
privilege or attorney work-product privilege, you have
to prepare a log.  So I will give American Family 14
days from today to prepare a privilege log.

With regard to the portion of the objection
that argues that it's overly broad, unduly burdensome,
or not likely to lead to the discovery of admissible

1    evidence, and I should also indicate that I'm also

2    addressing Request for Production of Document No. 10.

3    The two are pretty similar, both seeking regulatory

4    information.

5        But with regard to the general part that it's

6    overly broad, unduly burdensome, or not likely to lead

7    to the discovery of admissible evidence, I find that

8    the objection made is not specific.  It doesn't

9    identify how it would be overly broad or unduly

10    burdensome.  There is relevant information that could

11    be gathered from this.  There is no reason it would be

12    limited to just the State of South Dakota.

13        This Court has addressed similar decisions in

14    the Beyer decision and also in McElgunn and in

15    Lillibridge.  So for the reasons set forth in those

16    cases, the objection is overruled, and the motion to

17    compel is granted.

18        The next matter is Request for Production

19    No. 4, which deals with personnel files.  The request

20    is for personnel files of everyone involved with

21    Mr. Neugebauer's claim and the supervisors of those

22    individuals.

23        Request for Production of Documents No. 5

24    seeks information about compensation for all employees

25    involved in Mr. Neugebauer's claim and the

1    supervisory.

2         So I'm going to consider those two together.

3         American Family has turned over the claims

4    files of anyone who personally reviewed the claim, but

5    has not turned over the claims files of supervisors up

6    to the heads of the claims department.

7         In Hill vs. Auto-Owners Insurance Company, the

8    District Court in South Dakota considered a similar

9    objection to the supervisors' personnel files, and

10   found that evidence of incentives and disincentives

11   placed on claims handlers by those higher up in the

12   chain of command would tend to affect decisions that

13   the claims handlers made in individual claims; and

14   that that would include bonuses and disincentives

15   applied to those at the head of the claims department,

16   as it would be entirely rational to suppose that such

17   motivational pressure brought to bear on the head of a

18   department would be passed on to those employees in

19   his or her supervision.

20        The same rationale applies here.  I think the

21   evidence is relevant.  The Defendant has not met their

22   burden to show why it would be unduly burdensome for

23   them to produce the information.  There is already a

24   protective order in place to protect the privacy of

25   that information.  I don't see any other objection

that would outweigh the fact that it's relevant evidence.  So the motion to compel is granted.

The next is Request for Production 8.  This seeks information from American Family from all claims where the claim was initially denied, saying there was no damage, but American Family later determined there was damage to the shingles that were covered under the policy.  Mr. Morgans specifically addressed this in his argument.

I'm going to narrow the scope of this Request for Production of Documents.  Well, first of all, I think it does seek relevant information, but I'm going to narrow the geographic scope.  So it would include South Dakota and every state that touches South Dakota; so North Dakota, Minnesota, Iowa, Nebraska, Wyoming, and Montana.

It will also be limited to a five-year time period; for the past five years to the present.

I think with that narrowed scope, the information should not be overly burdensome or unduly broad.

So I'm going to grant the motion to compel in part, and deny it in part, because I'm narrowing the scope.

The next one is Request for Production No. 11,

1  which seeks all documents relating to any and every

2  investigation conducted by Heather Steffens.  Again,

3  I'm limiting it to the past five years.

4          Request No. 12 seeks all documents, pictures,

5  and reports for every investigation conducted by Trent

6  Nelson and Apex Structural Design on behalf of

7  American Family within the past five years.

8          Both of those requests seek information that

9  is relevant.  Heather Steffens is the person who

10  initially conducted the investigation in this matter

11  and initially found there was zero amount of damage.

12  She is an employee of American Family.  From what was

13  represented this morning, she's the catastrophic

14  adjustor based out of Iowa, and travels around the

15  country adjusting claims where there is catastrophic

16  loss in an area.

17          So I think that her pictures and reports would

18  produce highly relevant evidence dealing with how

19  American Family adjusts claims from catastrophic

20  losses, like the hail damage here in Sioux Falls.

21          Whether it's done here in South Dakota or

22  anywhere else across the nation goes to how American

23  Family treats all matters dealing with catastrophic

24  losses.  So there's no reason to limit it to

25  South Dakota.  Limited to a five-year time period, I

1    think that it no longer is unduly burdensome.

2         With regard to Trent Nelsen and Apex

3    Structural Design, although they are not employees of

4    American Family, they've been hired to provide expert

5    review.  The only information that's asked for in the

6    Request for Production No. 12 is any work they've done

7    on behalf of American Family; not all work they've

8    done for everyone else.  The request, as it's framed,

9    is limited to five years.

10         It does not appear to me to be unduly

11   burdensome or overly broad as it's currently framed,

12   because it's already limited just to the work they've

13   done on behalf of American Family.

14         So the Motion to Compel Request for Production

15   No. 12 is granted in full.

16         I believe that addresses everything.  Is there

17   anything I missed?

18         MR. PREHEIM:  That addresses all the items

19   that I have noted for this motion.

20         MR. MORGANS:  That's my understanding, too,

21   Judge.

22         THE COURT:  Mr. Preheim, if you would

23   prepare a draft order for me to review?

24         MR. PREHEIM:  Absolutely.

25         THE COURT:  Anything else anybody wanted to

bring up today?

MR. PREHEIM:  Two quick items, if I could, Your Honor.

The first item is with regards to Request for Production No. 8, which the Court limited it to the surrounding states, what I want to know is if the Court -- depending on what we find on that, is the Court willing to entertain, if we feel it prudent and appropriate, to go beyond, depending on what we find in those North Dakota, Minnesota, Iowa, Wyoming, Montana, in order to establish that this is a nationwide thing instead of just a regional area type of thing.

I don't know if the door is closed and the Court is done, or are we able to possibly come back to that later on?

THE COURT:  If that evidence leads to something that you think would support a nationwide pattern and practice, and you're not able to work out something with American Family regarding broadening the discovery, then you can ask the Court to reconsider.

MR. PREHEIM:  Understood.  The last item is with regards to attorney's fees.  Is the Court willing to allow for us to submit an affidavit or a billing on

that issue in terms of the Court's order, or do we want to address that now, or basically just wait?

THE COURT:  If you think you are entitled to attorney's fees, you should file a motion and an affidavit, and then Mr. Morgans will have an opportunity to respond.

MR. PREHEIM:  Thank you.  Understood.  I have no other issues then.

THE COURT:  Mr. Morgans, anything?

MR. MORGANS:  Nothing further, Judge. Thank you.

THE COURT:  We'll be adjourned.  Thanks.

(End of proceedings at 9:37 a.m.)

1    UNITED STATES DISTRICT COURT
     DISTRICT OF SOUTH DAKOTA  :SS  CERTIFICATE OF REPORTER
2    SOUTHERN DIVISION

3

4            I, Jill M. Connelly, Official United States
     District Court Reporter, Registered Merit Reporter,
     Certified Realtime Reporter, and Notary Public, hereby
5    certify that the above and foregoing transcript is the
     true, full, and complete transcript of the
6    above-entitled case, consisting of Pages 1 - 23.

7            I further certify that I am not a relative or
     employee or attorney or counsel of any of the parties
8    hereto, nor a relative or employee of such attorney or
     counsel, nor do I have any interest in the outcome or
9    events of the action.

10           IN TESTIMONY WHEREOF, I have hereto set my
     hand this 3rd day of August, 2016.
11

12                   /s/ Jill M. Connelly

13           _____

             Jill M. Connelly, RMR, CRR
14           Federal Court Reporter
             United States Courthouse
15           400 S. Phillips Avenue
             Sioux Falls, SD 57104
16           Phone:  (605) 330-6669
             E-mail:  Jill_Connelly@sdd.uscourts.gov
17

18

19

20

21

22

23

24

25

**$**

**$14,000** [1] - 4:21
**$3,781.19** [1] - 6:20
**$4,000** [1] - 4:21

**/**

**/s** [1] - 24:12

**1**

**1** [1] - 24:6
**10** [2] - 11:10, 17:2
**1085** [1] - 1:23
**11** [1] - 19:25
**12** [3] - 20:4, 21:6, 21:15
**13** [2] - 11:9, 15:13
**14** [1] - 16:21
**15-04189** [1] - 1:4

**2**

**2014** [2] - 3:22, 4:4
**2016** [3] - 1:12, 2:1, 24:10
**23** [1] - 24:6
**26(b)(5** [1] - 10:7

**3**

**33(b)(4** [1] - 14:22
**330-6669** [1] - 24:16
**34(b)(2)(B** [1] - 14:24
**3rd** [1] - 24:10

**4**

**4** [1] - 17:19
**400** [1] - 24:15

**5**

**5** [1] - 17:23
**57101-1085** [1] - 1:24
**57104** [1] - 24:15
**57108** [1] - 1:20

**6**

**605** [1] - 24:16

**7**

**7** [2] - 1:12, 2:1
**7521** [1] - 1:20

**8**

**8** [4] - 8:25, 19:3, 22:5

**9**

**9** [1] - 16:12
**9:00** [2] - 1:13, 2:3
**9:37** [1] - 23:13

**A**

**a.m** [3] - 1:13, 2:3, 23:13
**able** - 22:15, 22:19
**above-entitled** [1] - 24:6
**absolutely** [1] - 21:24
**action** [1] - 24:9
**actions** [1] - 16:13
**actual** [1] - 6:20
**add** [2] - 2:14, 3:9
**addition** [2] - 3:10, 6:18
**address** [2] - 11:20, 23:2
**addressed** [4] - 12:21, 16:6, 17:13, 19:8
**addresses** [2] - 21:16, 21:18
**addressing** [1] - 17:2
**adjourned** [1] - 23:12
**adjusting** [2] - 8:4, 20:15
**adjustor** [3] - 7:15, 7:17, 20:14
**adjusts** [1] - 20:19
**admissible** [5] - 14:12, 15:19, 15:23, 16:25, 17:7
**affect** [1] - 18:12
**affidavit** [2] - 22:25, 23:5
**agreed** [1] - 11:9
**akin** [1] - 5:8
**allegations** [7] - 5:5, 6:11, 13:14, 13:15, 13:19, 13:20, 13:24
**alleging** [2] - 12:4, 13:4
**allow** [1] - 22:25
**American** [28] - 2:6, 2:12, 4:2, 5:12, 7:22, 9:6, 12:4, 12:18, 15:14, 15:17, 15:21, 15:25, 16:2, 16:10, 16:13, 16:16, 16:21, 18:3, 19:4, 19:6, 20:7, 20:12, 20:19, 20:22, 21:4, 21:7, 21:13, 22:20
**AMERICAN** [1] - 1:8
**amount** [3] - 6:20, 7:12, 20:11
**analysis** [5] - 8:13, 8:17, 8:22, 9:13, 16:9
**analyze** [2] - 8:18, 9:16
**analyzed** [1] - 8:19
**Apex** [2] - 20:6, 21:2
**appear** [1] - 21:10
**appearances** [1] - 2:7
**APPEARANCES** [1] - 1:18
**appeared** [1] - 11:3
**appearing** [3] - 1:21, 1:24, 2:2
**applied** [1] - 18:15
**applies** [1] - 18:20
**apply** [1] - 11:15
**appraisal** [2] - 4:10, 4:18
**appropriate** [2] - 11:14, 22:9
**area** [2] - 20:16, 22:12
**areas** [1] - 5:2
**argue** [1] - 6:3
**argues** [1] - 16:24
**argument** [8] - 2:18, 3:3, 3:10, 7:9, 11:23, 11:25, 12:2, 19:9
**assigned** [2] - 7:15, 8:2
**attempted** [1] - 5:12
**attorney** [8] - 10:1, 10:12, 16:17, 16:18, 16:19, 16:20, 24:7, 24:8
**attorney's** [2] - 22:24, 23:4
**attorney-client** [4] - 10:1, 10:12, 16:17, 16:19
**August** [1] - 24:10
**Auto** [1] - 18:7
**Auto-Owners** [1] - 18:7
**Avenue** [2] - 1:20, 24:15
**aware** [3] - 4:7, 5:1, 6:24

**B**

**backdrop** [3] - 3:13, 3:20, 5:17
**bad** [3] - 5:5, 13:17, 15:15
**bad-faith** [1] - 13:17
**based** [3] - 3:22, 6:23, 7:17, 16:9, 20:14
**bases** [1] - 6:23
**basis** [2] - 7:12, 13:20
**bear** [1] - 18:17
**BEFORE** [1] - 1:16
**behalf** [5] - 2:9, 2:11, 20:6, 21:7, 21:13
**believes** [1] - 3:12
**Beyer** [1] - 17:14
**beyond** [4] - 5:14, 5:18, 5:25, 22:9
**billing** [1] - 22:25
**Billion** [1] - 1:23
**bit** [2] - 8:6, 12:11
**boils** [1] - 4:15
**bonuses** [1] - 18:14
**Box** [1] - 1:23
**brief** [7] - 2:17, 3:6, 3:18, 3:25, 6:3, 6:17, 7:9
**briefed** [1] - 5:20
**briefs** [6] - 2:13, 3:9, 3:10, 3:21, 5:18, 12:22
**bring** [1] - 22:1
**broad** [10] - 8:11, 13:21, 15:18, 15:24, 16:2, 16:24, 17:6, 17:9, 19:21, 21:11
**broadening** [1] - 22:20
**brought** [1] - 18:17
**burden** [3] - 15:25, 16:4, 18:22
**burdens** [1] - 3:14
**burdensome** [13] - 8:11, 8:20, 9:21, 15:18, 15:25, 16:2, 16:24, 17:6, 17:10, 18:22, 19:20, 21:1, 21:11

**C**

**case** [15] - 3:1, 5:3, 5:4, 5:6, 5:15, 8:9, 12:3, 13:9, 13:14, 13:15, 13:18, 13:23, 14:5, 16:7, 24:6
**case-specific** [1] - 8:9
**cases** [3] - 6:8, 12:20, 17:16
**cat** [1] - 7:17
**catastrophe** [1] - 7:17
**catastrophic** [5] - 8:3, 20:13, 20:15, 20:19, 20:23
**CERTIFICATE** [1] - 24:1
**Certified** [1] - 24:4
**certify** [2] - 24:5, 24:7
**cetera** [1] - 9:4
**chain** [1] - 18:12
**change** [1] - 6:5
**Civ** [1] - 1:4
**claim** [7] - 5:24, 7:15, 10:9, 17:21, 17:25, 18:4, 19:5
**claimed** [2] - 9:6, 10:1
**claiming** [3] - 10:8, 10:12, 16:19
**claims** [30] - 3:13, 3:20, 4:12, 5:7, 6:11, 6:14, 6:21, 7:15, 7:22, 9:2, 9:3, 9:4, 11:18, 12:23, 14:17, 15:14, 15:16, 16:14, 18:3, 18:5, 18:6, 18:11, 18:13, 18:15, 19:4, 20:15, 20:19
**claims-handling** [1] - 16:14
**clarification** [1] - 10:4
**clarify** [1] - 7:13
**client** [5] - 3:1, 10:1, 10:12, 16:17, 16:19
**closed** [1] - 22:14
**coming** [1] - 12:6
**command** [1] - 18:12
**comments** [1] - 3:10
**communications** [1] - 10:10
**companies** [1] - 12:1
**COMPANY** [1] - 1:9
**company** [1] - 13:5
**Company** [3] - 2:6,

2:12, 18:7
**comparison** [1] - 13:13
**Compel** [1] - 21:14
**compel** [5] - 3:18, 10:20, 17:17, 19:2, 19:22
**compensation** [2] - 5:22, 17:24
**complained** [1] - 4:1
**Complaint** [2] - 3:19, 3:22
**complaints** [1] - 4:7
**complete** [2] - 10:6, 24:5
**completed** [2] - 9:4, 9:25
**completely** [1] - 12:6
**conducted** [3] - 20:2, 20:5, 20:10
**Connelly** [3] - 24:3, 24:12, 24:13
**consider** [3] - 4:24, 5:5, 18:2
**considered** [2] - 7:25, 18:8
**considering** [1] - 9:13
**consistent** [1] - 14:3
**consisting** [1] - 24:6
**context** [3] - 3:12, 4:5, 4:20
**corporate** [3] - 5:13, 10:5, 13:16
**corporate-wide** [1] - 13:16
**correct** [5] - 4:21, 9:1, 11:1, 11:7, 11:8
**counsel** [8] - 2:2, 2:7, 7:10, 9:9, 10:5, 10:19, 24:7, 24:8
**country** [1] - 20:15
**COURT** [26] - 1:1, 2:4, 2:13, 3:7, 7:1, 7:14, 7:24, 8:2, 8:24, 9:22, 10:1, 10:7, 10:15, 10:22, 11:2, 11:13, 11:17, 13:11, 14:6, 21:22, 21:25, 22:17, 23:3, 23:9, 23:12, 24:1
**Court** [16] - 1:16, 2:2, 2:21, 3:4, 6:24, 16:6, 17:13, 18:8, 22:5, 22:7, 22:8, 22:15, 22:21, 22:24, 24:4, 24:14
**Court's** [1] - 23:1
**Courthouse** [2] - 1:11, 24:14

**Courts** [1] - 16:5
**covered** [2] - 9:7, 19:7
**creates** [1] - 9:19
**critical** [1] - 3:15
**CRR** [1] - 24:13

## D

**DAKOTA** [2] - 1:2, 24:1
**Dakota** [21] - 2:21, 11:18, 11:23, 12:3, 12:13, 12:16, 12:20, 12:23, 13:3, 13:6, 16:5, 16:15, 17:12, 18:8, 19:14, 19:15, 20:21, 20:25, 22:10
**damage** [13] - 4:2, 4:16, 7:3, 7:5, 7:11, 9:5, 9:7, 9:8, 14:17, 19:6, 19:7, 20:11, 20:20
**damages** [4] - 4:19, 6:19, 14:12
**data** [2] - 8:18, 8:19
**date** [1] - 9:18
**days** [1] - 16:22
**dealing** [4] - 9:14, 11:19, 20:18, 20:23
**deals** [1] - 17:19
**decision** [3] - 5:9, 6:7, 17:14
**decisions** [3] - 5:2, 17:13, 18:12
**deductible** [1] - 12:7
**Defendant** [9] - 1:10, 1:25, 2:12, 3:12, 5:1, 5:12, 5:21, 8:12, 18:21
**Defendant's** [1] - 13:13
**Defendants** [1] - 11:18
**demonstrate** [1] - 12:17
**demonstrated** [1] - 12:18
**denial** [1] - 9:16
**denied** [1] - 19:5
**Dennis** [2] - 2:5, 2:10
**DENNIS** [1] - 1:5
**Denny** [1] - 3:2
**deny** [2] - 5:10, 19:23
**denying** [2] - 12:5
**department** [3] - 18:6, 18:15, 18:18
**deprive** [1] - 13:3

**Derek** [1] - 1:19
**describe** [1] - 10:9
**Design** [2] - 20:6, 21:3
**determined** [4] - 7:2, 7:5, 9:8, 19:6
**determining** [1] - 6:18
**direction** [1] - 6:5
**directly** [1] - 5:23
**disagree** [2] - 9:9, 10:13
**disclosed** [1] - 10:11
**discovery** [8] - 2:20, 3:16, 4:24, 5:14, 15:19, 16:25, 17:7, 22:21
**discussions** [1] - 10:19
**disincentives** [2] - 18:10, 18:14
**dispute** [2] - 4:15, 10:18
**DISTRICT** [4] - 1:1, 1:2, 24:1, 24:1
**District** [4] - 1:16, 2:21, 18:8, 24:4
**DIVISION** [2] - 1:3, 24:2
**Document** [1] - 17:2
**Documents** [4] - 11:7, 15:6, 17:23, 19:11
**documents** [9] - 6:14, 8:15, 8:20, 10:10, 10:23, 15:1, 16:12, 20:1, 20:4
**done** [7] - 2:25, 10:20, 20:21, 21:6, 21:8, 21:13, 22:15
**door** [1] - 22:14
**down** [1] - 4:15
**draft** [1] - 21:23
**duly** [1] - 15:25

## E

**E-mail** [1] - 24:16
**emphasizing** [1] - 2:19
**employee** [6] - 7:7, 7:24, 8:1, 20:12, 24:7, 24:8
**employees** [4] - 5:23, 17:24, 18:18, 21:3
**End** [1] - 23:13
**end** [1] - 13:21
**entertain** [2] - 3:5,

22:8
**entirely** [1] - 18:16
**entitled** [3] - 2:5, 23:3, 24:6
**entries** [1] - 9:5
**Eric** [1] - 2:9
**essentially** [2] - 12:11, 13:3
**establish** [3] - 12:24, 13:1, 22:11
**estimate** [1] - 4:18
**et** [1] - 9:4
**evaluations** [1] - 9:5
**event** [1] - 24:9
**events** [2] - 24:9
**evidence** [11] - 14:8, 14:14, 15:19, 15:23, 17:1, 17:7, 18:10, 18:21, 19:2, 20:18, 22:17
**except** [1] - 15:10
**excuses** [1] - 10:21
**expert** [1] - 21:4
**expressly** [1] - 10:9
**extent** [2] - 6:4, 15:10
**extremely** [1] - 9:20

## F

**face** [1] - 5:8
**fact** [3] - 4:6, 9:15, 19:1
**facts** [4] - 4:23, 5:3, 6:24, 13:14
**factual** [4] - 3:12, 3:19, 5:17, 9:14
**factually** [1] - 6:16
**faith** [3] - 5:5, 13:17, 15:15
**Falls** [6] - 1:12, 1:17, 1:20, 1:24, 20:20, 24:15
**Family** [27] - 2:6, 2:12, 4:2, 5:12, 7:22, 9:6, 12:4, 12:18, 15:14, 15:17, 15:21, 15:25, 16:3, 16:10, 16:16, 16:21, 18:3, 19:4, 19:6, 20:7, 20:12, 20:19, 20:23, 21:4, 21:7, 21:13, 22:20
**FAMILY** [1] - 1:8
**Family's** [1] - 16:13
**far** [3] - 4:6, 6:8, 10:19
**Federal** [3] - 1:11, 2:21, 24:14

**fees** [2] - 22:24, 23:4
**few** [1] - 3:10
**figure** [2] - 12:23, 12:25
**File** [1] - 5:10
**file** [7] - 4:12, 5:7, 5:10, 6:6, 7:7, 7:23, 23:4
**filed** [1] - 10:23
**files** [12] - 5:20, 5:22, 6:9, 6:14, 9:2, 9:3, 17:19, 17:20, 18:4, 18:5, 18:9
**Finley** [2] - 6:22, 7:8
**first** [12] - 3:18, 3:19, 3:25, 4:9, 5:19, 7:23, 9:19, 10:23, 14:7, 15:12, 19:11, 22:4
**five** [12] - 11:5, 11:10, 11:14, 15:11, 15:20, 15:24, 19:17, 19:18, 20:3, 20:7, 20:25, 21:9
**five-year** [7] - 11:5, 11:14, 15:11, 15:20, 15:24, 19:17, 20:25
**focus** [1] - 3:21
**followed** [1] - 4:13
**foregoing** [1] - 24:5
**form** [1] - 9:10
**formally** [1] - 12:1
**forms** [1] - 9:4
**forth** [1] - 17:15
**forward** [1] - 16:3
**four** [1] - 5:22
**frame** [2] - 4:21, 11:3
**framed** [2] - 21:8, 21:11
**full** [4] - 4:17, 21:15, 24:5
**Fuller** [1] - 1:19

## G

**gathered** [1] - 17:11
**general** [12] - 10:22, 11:17, 13:7, 14:3, 14:6, 14:15, 14:16, 14:19, 14:21, 15:4, 15:9, 17:5
**generalizing** [1] - 4:19
**generally** [1] - 15:4
**gentleman** [1] - 7:5
**geographic** [1] - 19:13
**goal** [1] - 5:10
**Gowan** [2] - 5:9, 6:7
**grant** [1] - 19:22

**granted** [3] - 17:17, 19:2, 21:15
**grounds** [1] - 14:22
**guess** [2] - 8:7, 12:24

## H

**hail** [4] - 9:4, 11:19, 14:17, 20:20
**hand** [1] - 24:10
**handler** [1] - 7:23
**handlers** [2] - 18:11, 18:13
**handling** [1] - 12:23, 16:14
**head** [2] - 18:15, 18:17
**heads** [1] - 18:6
**hearing** [1] - 2:5
**Heather** [7] - 6:15, 7:1, 7:10, 7:14, 7:16, 20:2, 20:9
**help** [1] - 12:17
**hereby** [1] - 24:4
**hereto** [2] - 24:8, 24:10
**higher** [2] - 7:11, 18:11
**highly** [1] - 20:18
**Hill** [1] - 18:7
**hired** [1] - 21:4
**Honor** [2] - 11:22, 22:3
**Honorable** [1] - 1:16

## I

**identified** [1] - 6:19
**identifies** [1] - 10:6
**identify** [5] - 8:8, 8:15, 9:2, 17:9
**important** [4] - 2:23, 3:1, 4:4, 4:23
**impression** [1] - 2:24
**IN** [1] - 24:10
**inaccurate** [1] - 6:24
**inadequate** [1] - 14:10
**inappropriate** [1] - 13:10
**incentives** [1] - 18:10
**incidents** [1] - 8:3
**include** [2] - 18:14, 19:13
**including** [4] - 9:5, 9:15, 15:2, 16:6

**indicate** [1] - 17:1
**indicated** [3] - 10:23, 11:4, 16:19
**indicates** [1] - 14:22
**individual** [3] - 13:17, 14:18, 18:13
**individuals** [1] - 17:22
**information** [17] - 3:15, 5:22, 13:3, 15:13, 15:22, 16:17, 17:4, 17:10, 17:24, 18:23, 18:25, 19:4, 19:12, 19:20, 20:8, 21:5
**initial** [3] - 7:21, 9:16, 12:7
**inspection** [6] - 3:25, 4:2, 4:9, 4:10, 7:21, 9:19
**inspections** [1] - 7:19
**instance** [4] - 3:19, 5:9, 6:7, 6:10
**instead** [2] - 11:5, 22:12
**Insurance** [3] - 2:6, 2:12, 18:7
**INSURANCE** [1] - 1:9
**insurance** [3] - 12:1, 13:5, 15:15
**insured** [1] - 12:8
**insurer's** [1] - 14:9
**intend** [1] - 3:3
**intended** [1] - 5:16
**interest** [1] - 24:8
**Interrogatories** [1] - 11:6
**interrogatory** [2] - 14:23, 15:5
**Interrogatory** [2] - 11:9, 15:13
**investigated** [1] - 6:16
**investigation** [6] - 12:7, 12:10, 14:10, 20:2, 20:5, 20:10
**involved** [5] - 3:14, 4:8, 5:23, 17:20, 17:25
**Iowa** [4] - 7:18, 19:15, 20:14, 22:10
**issue** [11] - 2:19, 2:22, 2:23, 3:13, 5:19, 5:25, 12:21, 14:13, 16:6, 23:1
**issues** [2] - 2:20, 3:16, 5:15, 5:18, 23:8
**item** [3] - 15:12,

22:4, 22:23
**items** [2] - 21:18, 22:2
**itself** [1] - 9:11

## J

**Jill** [3] - 24:3, 24:12, 24:13
**Jill_Connelly@sdd.uscourts.gov** [1] - 24:16
**Judge** [15] - 1:16, 3:8, 3:11, 4:20, 5:20, 7:8, 7:18, 8:1, 8:7, 9:12, 9:25, 10:6, 10:14, 21:21, 23:10
**judge** [2] - 10:17, 13:12
**July** [1] - 1:12
**JULY** [1] - 2:1
**June** [2] - 3:22, 4:4
**jury** [1] - 14:13

## K

**Karen** [1] - 1:16
**kind** [1] - 2:19
**knowledge** [1] - 14:9

## L

**last** [2] - 6:15, 22:23
**law** [1] - 12:14
**lead** [5] - 14:7, 15:19, 15:23, 16:25, 17:6
**leads** [1] - 22:17
**least** [1] - 4:6
**less** [2] - 3:1, 12:6
**level** [1] - 8:17
**likely** [3] - 15:18, 16:25, 17:6
**Lillibridge** [3] - 16:7, 16:9, 17:15
**limit** [3] - 5:13, 13:2, 20:24
**limited** [11] - 7:20, 12:13, 12:19, 12:22, 16:15, 17:12, 19:17, 20:25, 21:9, 21:12, 22:5
**limiting** [1] - 12:2, 20:3
**litigated** [1] - 2:20
**LLP** [2] - 1:19, 1:23
**log** [5] - 9:5, 9:23, 9:24, 16:21, 16:22
**look** [2] - 6:8, 8:23

**loss** [2] - 11:19, 20:16
**losses** [2] - 20:20, 20:24
**Louise** [1] - 1:20
**low** [1] - 14:10

## M

**mail** [1] - 24:16
**matter** [6] - 2:5, 3:17, 11:13, 15:16, 17:18, 20:10
**matters** [1] - 20:23
**McElgunn** [1] - 17:14
**means** [2] - 9:10, 10:11
**meet** [1] - 16:4
**mention** [1] - 6:17
**mentioned** [1] - 3:11
**Merit** [1] - 24:4
**merit** [1] - 15:21
**merited** [1] - 4:17
**met** [1] - 18:21
**Minnesota** [2] - 19:15, 22:10
**missed** [1] - 21:17
**misunderstandings** [1] - 9:14
**Montana** [2] - 19:16, 22:11
**Morgans** [7] - 1:22, 2:11, 3:7, 13:11, 19:8, 23:5, 23:9
**MORGANS** [15] - 2:11, 3:8, 7:4, 7:16, 7:25, 8:5, 9:1, 9:24, 10:3, 10:13, 10:17, 11:1, 13:12, 21:20, 23:10
**morning** [2] - 4:3, 20:13
**Motion** [1] - 21:14
**motion** [8] - 3:18, 10:20, 15:12, 17:16, 19:2, 19:22, 21:19, 23:4
**motivational** [1] - 18:17
**MR** [25] - 2:9, 2:11, 2:16, 3:8, 7:4, 7:16, 7:25, 8:5, 9:1, 9:24, 10:3, 10:13, 10:17, 11:1, 11:8, 11:16, 11:21, 13:12, 21:18, 21:20, 21:24, 22:2, 22:23, 23:7, 23:10
**must** [4] - 10:8, 10:11, 13:19, 14:23

**MUTUAL** [1] - 1:8
**Mutual** [2] - 2:6, 2:12
**Myers** [1] - 1:23

## N

**narrow** [3] - 13:22, 19:10, 19:13
**narrowed** [1] - 19:19
**narrowing** [1] - 19:23
**nation** [1] - 20:22
**national** [1] - 9:2
**nationally** [1] - 8:8
**nationwide** [3] - 16:15, 22:12, 22:18
**nature** [1] - 8:20, 10:9
**Nebraska** [1] - 19:16
**need** [3] - 3:5, 10:6, 12:22
**needed** [3] - 3:6, 8:22, 9:10
**neighborhood** [1] - 4:20
**Nelsen** [2] - 1:19, 21:2
**Nelson** [1] - 20:6
**Neugebauer** [6] - 2:5, 2:10, 3:2, 4:14, 4:16, 12:3
**NEUGEBAUER** [1] - 1:5
**Neugebauer's** [2] - 17:21, 17:25
**next** [4] - 16:11, 17:18, 19:3, 19:25
**night** [1] - 9:18
**nonproduction** [1] - 9:12
**North** [3] - 12:16, 19:15, 22:10
**Notary** [1] - 24:4
**note** [6] - 2:7, 4:4, 5:10, 5:17, 6:16, 14:20
**noted** [2] - 4:2, 21:19
**notes** [2] - 4:12, 6:21
**nothing** [1] - 23:10
**novel** [1] - 2:22
**number** [1] - 12:6

## O

**objecting** [1] - 14:22
**objection** [17] - 11:17, 13:8, 14:3, 14:7, 14:15, 14:16,

14:19, 15:1, 15:7, 15:17, 15:20, 16:16, 16:23, 17:8, 17:16, 18:9, 18:25

**objections** [5] - 10:22, 14:2, 14:21, 15:4, 15:9

**obviously** [3] - 8:14, 8:21, 13:15

**occurred** [4] - 4:3, 4:10, 4:11, 4:14

**OF** [3] - 1:2, 24:1

**offering** [1] - 14:10

**offers** [1] - 14:11

**Official** [1] - 24:3

**once** [1] - 16:1

**one** [7] - 6:3, 6:18, 7:2, 7:4, 10:23, 10:25, 19:25

**open** [1] - 2:2

**opportunity** [1] - 23:6

**opposition** [1] - 3:11

**order** [7] - 10:24, 12:23, 16:10, 18:24, 21:23, 22:11, 23:1

**originally** [1] - 11:12

**outcome** [1] - 24:8

**outlined** [2] - 3:20, 12:21

**outright** [1] - 12:5

**outside** [3] - 11:18, 11:22, 13:5

**outweigh** [1] - 19:1

**overall** [1] - 11:13

**overly** [9] - 9:20, 15:18, 15:24, 16:2, 16:24, 17:6, 17:9, 19:20, 21:11

**overruled** [2] - 15:9, 17:16

**own** [1] - 5:3

**Owners** [1] - 18:7

**P**

**Pages** [1] - 24:6

**part** [5] - 6:2, 10:3, 17:5, 19:23

**particular** [3] - 5:18, 15:8, 16:7

**parties** [2] - 5:21, 24:7

**party** [2] - 10:8, 15:15

**passed** [1] - 18:18

**past** [3] - 19:18, 20:3, 20:7

**pattern** [3] - 12:17,

14:9, 22:19

**perform** [1] - 7:19

**period** [7] - 11:5, 11:14, 15:11, 15:20, 15:24, 19:18, 20:25

**periods** [1] - 11:11

**person** [1] - 20:9

**personally** [1] - 18:4

**personnel** [9] - 5:20, 5:21, 5:23, 6:4, 6:6, 6:9, 17:19, 17:20, 18:9

**Phillips** [1] - 24:15

**Phone** [1] - 24:16

**pictures** [2] - 20:4, 20:17

**place** [3] - 10:25, 18:24

**placed** [1] - 18:11

**Plaintiff** [4] - 1:6, 1:21, 2:10, 16:1

**plaintiff** [1] - 13:4

**Plaintiff's** [3] - 3:17, 6:3, 6:11, 6:17, 7:10

**plaintiffs** [1] - 11:4

**Plaintiffs** [1] - 4:11

**PO** [1] - 1:23

**point** [2] - 6:2, 8:16

**Point** [1] - 13:19

**policy** [2] - 9:7, 19:8

**portion** [1] - 16:23

**portions** [1] - 10:3

**position** [1] - 13:13

**possession** [3] - 4:11, 8:16, 8:20

**possible** [1] - 14:8

**possibly** [2] - 22:15

**practice** [9] - 8:12, 12:4, 12:18, 13:2, 13:5, 13:16, 13:25, 14:9, 22:19

**PREHEIM** [10] - 2:9, 2:16, 11:8, 11:16, 11:21, 21:18, 21:24, 22:2, 22:23, 23:7

**Preheim** [4] - 2:9, 2:14, 11:2, 21:22

**prepare** [4] - 9:22, 16:21, 16:22, 21:23

**present** [1] - 19:18

**pressure** [1] - 18:17

**pretty** [2] - 14:21, 17:3

**previously** [1] - 16:18

**primarily** [2] - 2:16, 3:8

**primary** [1] - 3:21

**privacy** [1] - 18:24

**privilege** [9] - 9:22,

9:24, 10:2, 10:8, 10:12, 10:15, 16:20, 16:22

**privileges** [1] - 16:18

**problem** [2] - 12:2, 13:2

**procedurally** [1] - 13:9

**proceedings** [1] - 23:13

**process** [3] - 4:10, 4:18, 9:10

**processing** [1] - 15:16

**produce** [3] - 9:3, 18:23, 20:18

**produced** [4] - 5:21, 6:1, 7:7, 10:11

**producing** [1] - 3:14

**product** [2] - 16:18, 16:20

**production** [4] - 6:9, 8:15, 10:5, 14:25

**Production** [13] - 8:25, 11:7, 15:6, 16:11, 17:2, 17:18, 17:23, 19:3, 19:11, 19:25, 21:6, 21:14, 22:5

**property** [1] - 16:13

**proportional** [1] - 14:4

**proportionality** [3] - 4:24, 5:15, 9:13

**protect** [1] - 18:24

**protected** [1] - 16:17

**protective** [2] - 10:24, 18:24

**provide** [2] - 7:21, 21:4

**prudent** [1] - 22:8

**Public** [1] - 24:4

**punitive** [1] - 14:12

**Q**

**quick** [1] - 22:2

**R**

**raise** [2] - 6:22, 8:16

**raised** [2] - 14:16, 15:12

**raises** [1] - 8:21

**rather** [1] - 14:19

**rational** [1] - 18:16

**rationale** [1] - 18:20

**reach** [1] - 9:20

**read** [1] - 2:13

**really** [2] - 2:22, 5:13

**Realtime** [1] - 24:4

**reason** [4] - 7:12, 9:12, 17:11, 20:24

**reasonable** [1] - 16:8

**reasonableness** [1] - 4:8

**reasonably** [1] - 6:1

**reasons** [4] - 6:3, 13:7, 15:3, 17:15

**recognition** [2] - 3:23, 3:25

**reconsider** [1] - 22:22

**record** [2] - 2:8

**reduce** [1] - 11:10

**reduced** [3] - 11:4, 15:10, 15:20

**reference** [1] - 4:22

**referencing** [1] - 6:13

**reflect** [1] - 6:21

**refuse** [1] - 15:5

**regard** [11] - 11:2, 11:9, 14:6, 14:18, 14:20, 14:24, 14:25, 15:7, 16:23, 17:5, 21:2

**regarding** [2] - 15:2, 22:20

**regards** [5] - 5:19, 6:14, 11:22, 22:4, 22:24

**regional** [1] - 22:12

**Registered** [1] - 24:4

**regulatory** [2] - 16:13, 17:3

**reinspection** [1] - 7:6

**reiterate** [1] - 6:7

**related** [3] - 6:14, 9:4, 14:1

**relating** [2] - 16:12, 20:1

**relation** [1] - 3:13

**relational** [1] - 14:5

**relative** [2] - 24:7, 24:8

**relevance** [1] - 16:1

**relevant** [10] - 13:3, 14:8, 14:14, 15:23, 17:10, 18:21, 19:1, 19:12, 20:9, 20:18

**rely** [3] - 2:16, 3:5, 3:9

**remade** [1] - 11:24

**remained** [1] - 11:11

**repairable** [1] - 4:1

**repeatedly** [1] - 2:20

**replacement** [1] - 4:17

**reply** [1] - 3:25

**REPORTER** [1] - 24:1

**Reporter** [4] - 24:4, 24:4, 24:14

**reports** [2] - 20:5, 20:17

**reprehensibility** [1] - 14:13

**represented** [1] - 20:13

**Request** [13] - 8:25, 11:6, 15:6, 16:11, 17:2, 17:18, 19:3, 19:10, 19:25, 21:6, 21:14, 22:4

**request** [18] - 3:14, 7:12, 8:7, 8:11, 8:23, 9:21, 15:2, 15:8, 15:10, 15:24, 16:8, 16:11, 16:14, 16:15, 17:19, 17:23, 20:4, 21:8

**requested** [4] - 4:13, 10:4, 11:12, 15:22

**requests** [10] - 4:25, 6:23, 8:14, 8:21, 11:3, 11:15, 14:19, 14:25, 15:13, 20:8

**require** [1] - 8:12

**required** [1] - 10:18

**reserves** [1] - 9:5

**respectfully** [1] - 9:9

**respond** [3] - 15:5, 16:10, 23:6

**responses** [2] - 14:2, 14:4

**review** [4] - 8:13, 9:2, 21:5, 21:23

**reviewed** [1] - 18:4

**Richard** [2] - 6:22, 7:8

**RMR** [1] - 24:13

**role** [1] - 7:20

**roof** [2] - 4:17

**rule** [1] - 14:22

**Rule** [2] - 10:7, 14:24

**rules** [1] - 14:21

**S**

**scheduled** [1] - 2:4

**Schreier** [1] - 1:16

**scope** [4] - 19:10, 19:13, 19:19, 19:24

**SD** [5] - 1:12, 1:17, 1:20, 1:24, 24:15

**second** [5] - 3:23, 4:3, 4:9, 4:18, 9:17
**see** [1] - 18:25
**seek** [2] - 19:12, 20:8
**seeking** [1] - 17:3
**seeks** [4] - 17:24, 19:4, 20:1, 20:4
**sense** [4] - 2:18, 3:21, 5:4, 12:10
**set** [3] - 5:14, 17:15, 24:10
**settlement** [1] - 14:11
**seven** [1] - 11:25
**several** [1] - 16:5
**shifted** [2] - 3:20, 5:6
**shifting** [1] - 13:23
**shingles** [3] - 9:7, 9:8, 19:7
**show** [4] - 14:8, 14:13, 16:1, 18:22
**shown** [1] - 16:1
**sides** [1] - 2:14
**similar** [5] - 8:9, 16:7, 17:3, 17:13, 18:8
**simply** [1] - 10:17
**Sioux** [6] - 1:12, 1:17, 1:20, 1:24, 20:20, 24:15
**sitting** [1] - 5:7
**situation** [2] - 5:11, 9:17
**situations** [1] - 8:9
**six** [1] - 11:24
**slightly** [1] - 6:5
**SOUTH** [2] - 1:2, 24:1
**South** [18] - 2:21, 11:18, 11:23, 12:3, 12:13, 12:16, 12:20, 12:23, 13:2, 13:6, 16:5, 16:15, 17:12, 18:8, 19:14, 19:15, 20:21, 20:25
**SOUTHERN** [2] - 1:3, 24:2
**specific** [7] - 5:5, 8:9, 8:23, 13:13, 14:2, 14:21, 17:8
**specifically** [3] - 11:20, 14:18, 19:8
**specificity** [3] - 14:23, 15:2, 15:7
**spend** [1] - 8:6
**SS** [1] - 24:1
**stand** [1] - 14:15
**start** [3] - 8:10, 8:14, 13:19
**starting** [2] - 3:18,

13:21
**state** [4] - 12:15, 12:16, 15:7, 19:14
**State** [1] - 17:12
**STATES** [2] - 1:1, 24:1
**states** [2] - 14:25, 22:6
**States** [2] - 24:3, 24:14
**stating** [1] - 7:11
**Steffens** [7] - 6:15, 7:2, 7:10, 7:14, 7:16, 20:2, 20:9
**Steve** [1] - 2:11
**Steven** [1] - 1:22
**still** [1] - 12:17
**storm** [4] - 3:22, 3:24, 4:3, 9:18
**strategy** [1] - 5:10
**Structural** [2] - 20:6, 21:3
**structured** [1] - 3:4
**submit** [2] - 5:3, 22:25
**substantial** [1] - 5:13
**substantially** [1] - 8:21
**sufficient** [1] - 15:5
**supervision** [1] - 18:19
**supervisor** [1] - 5:24
**supervisors** [3] - 6:12, 17:21, 18:5
**supervisors'** [1] - 18:9
**supervisory** [1] - 18:1
**support** [1] - 22:18
**suppose** [1] - 18:16
**surrounding** [1] - 22:6
**systematic** [1] - 13:24
**systemic** [3] - 12:4, 13:4, 13:16
**systemic-wide** [2] - 13:4, 13:16

**T**

**tangible** [1] - 10:10
**telephone** [3] - 1:21, 1:24, 2:2
**ten** [2] - 6:15, 11:5
**tend** [1] - 18:12
**tenuous** [1] - 9:20
**terms** [1] - 23:1
**TESTIMONY** [1] -

24:10
**THE** [24] - 2:4, 2:13, 3:7, 7:1, 7:14, 7:24, 8:2, 8:24, 9:22, 10:1, 10:7, 10:15, 10:22, 11:2, 11:13, 11:17, 13:11, 14:6, 21:22, 21:25, 22:17, 23:3, 23:9, 23:12
**theory** [1] - 13:24
**therefore** [1] - 14:15
**they've** [5] - 15:14, 21:4, 21:6, 21:7, 21:12
**tie** [1] - 6:10
**tie-in** [1] - 6:10
**timeliness** [2] - 4:7, 4:9
**timing** [1] - 10:19
**today** [2] - 16:22, 22:1
**together** [1] - 18:2
**touches** [1] - 19:14
**transcript** [2] - 24:5, 24:5
**travel** [1] - 7:18
**travels** [1] - 20:14
**treats** [1] - 20:23
**Trent** [2] - 20:5, 21:2
**true** [2] - 11:1, 24:5
**trying** [1] - 8:8
**turned** [3] - 10:24, 18:3, 18:5
**two** [4] - 5:17, 17:3, 18:2, 22:2
**type** [6] - 5:11, 6:11, 8:12, 12:14, 12:15, 22:12
**typically** [1] - 8:15

**U**

**U.S** [2] - 1:11, 1:16
**under** [2] - 9:7, 19:7
**understood** [3] - 11:16, 22:23, 23:7
**unduly** [9] - 15:18, 16:2, 16:24, 17:6, 17:9, 18:22, 19:20, 21:1, 21:10
**unfair** [1] - 15:15
**unique** [3] - 5:3, 5:4, 9:17
**UNITED** [2] - 1:1, 24:1
**United** [2] - 24:3, 24:14
**unreasonably** [1] - 14:10

**up** [7] - 4:13, 8:16, 12:6, 14:18, 18:5, 18:11, 22:1

**V**

**valuation** [1] - 3:15
**various** [1] - 12:1
**versus** [1] - 8:20
**vs** [1] - 1:7, 2:5, 18:7

**W**

**wait** [1] - 23:2
**waived** [1] - 10:15
**WHEREOF** [1] - 24:10
**wide** [3] - 13:4, 13:16
**widespread** [1] - 13:1
**Williamson** [1] - 1:19
**willing** [3] - 3:4, 22:8, 22:24
**work-product** [2] - 16:18, 16:20
**written** [1] - 11:6
**Wyoming** [2] - 19:16, 22:10

**Y**

**year** [8] - 7:23, 11:5, 11:14, 15:11, 15:20, 15:24, 19:17, 20:25
**years** [9] - 6:15, 8:11, 11:5, 11:10, 19:18, 20:3, 20:7, 21:9

**Z**

**zero** [2] - 7:11, 20:11